Good morning. May it please the court, I'm Sarah Burgundy representing Warden Dan Winkleski. Just to start, I'd like to reserve three minutes for rebuttal. You keep your own time for that. I do, okay. So I'm here to ask the court to reverse the decision of the district court granting Michael Gilbreath's habeas petition. So this is a Strickland claim in habeas. So even though Gilbreath is the appellee here, he retains the burden to show that the Wisconsin Court of Appeals committed clear error in holding that Gilbreath's trial counsel was neither deficient nor prejudicial. And as this court knows in habeas, that burden is heavy. Review of a Strickland claim is doubly deferential. And since Gilbreath's claims for focus on the unreasonable determination of the facts part of AEDPA, he needs to show clear and convincing evidence that the state courts face their decision on a wrong determination of the facts. And he can't do that. Ms. Burgundy, forgive me, this is Judge Rovner. The state has described the prosecution case as compelling. What was the most compelling evidence against Mr. Gilbreath? I think the most compelling evidence was that the victim SL went through around five interviews to discuss these assaults. Now we talk about a lot of inconsistencies between her reporting in 2008 and 2010, but she really was largely consistent with what happened. That the defendant would come into her room drunk and assault her while she pretended to be asleep. She listed three specific events. I think what makes her version of events particularly compelling is that when she re-reported in 2010, she didn't allege new assaults, didn't try to make it more, she really didn't change anything around. She didn't say there's something new or something else going on. And the fact that she was coming back as a 20-year-old. Hold on a minute. Of course she said different things. Before she said it was over the covers. No, I'm sorry. I'm sorry, Your Honor. What I mean by that is she didn't allege that new assaults. She comes in and to have her come in as a 20-year-old to testify when she's been put into foster care, she's left, she's made a new life. That really was the compelling evidence. I think the other part of it too was that Hayden and Patty, her sister and mother, although generally said they didn't see anything happen and they were in a position to see it apparently, there were a lot of gaps in their testimony that the state exploited in this case where Hayden did make some comments when she was interviewed suggesting that there was something else going on. And I think the other part of it really was Gilbreth's own testimony. A lot of it was just very self-serving. He kind of painted himself, most of his testimony was fairly consistent with S.L.'s until he started looking bad. And then it became sort of a like, well, I don't even remember what their bed looked like. I don't know. But if I did remember, I couldn't fit in it. I mean, I think there was just a lot of doubt in his version of events that came out of his testimony. What kind of strategic reason could there be not to present the testimony of Kayla, the cousin who denied that S.L. told her about the assaults at the time they were happening? What's the strategic? I think in that case, counsel, so counsel didn't interview Kayla before trial, though she was in the courtroom. I think because of the nature of, you know, I think counsel made a decision before trial that this, you know, and I don't even, I wouldn't even call it a disclosure that S.L. made to her. I mean, both were children at the time. She said she spelled the word molest on a piece of paper and that Kayla reacted to it. Now, if Kayla would have gone on and said, no, that didn't happen. I, you know, it really didn't add much. And I think really the key is the state never really relied on that statement in any respect in its case. I think it was really undisputed that nothing happened until 2008. Nobody reported any assaults until 2008. So the fact that S.L. may or may not have told another child in incredibly vague terms about an assault really wasn't, you know, something that the defense counsel wanted to focus the jury on. But that's not something that the considered before trial, is it? He didn't interview Kayla before trial. They talked about it a little bit at the Mockner hearing. You know, the district court makes a, and Mr. Gilbreth kind of make a big deal about the fact that he didn't, that counsel didn't file a witness list in this case. So seems to suggest that he was hamstrung even if he wanted to present Kayla. But the notice requirement doesn't apply to impeachment or rebuttal witnesses. So in the course of trial, counsel, number one felt that that statement was, you know, that S.L.'s statement regarding, you know, writing the word molest was an important thing he needed to counteract. He could have, you know, he could have presented Kayla if he wanted to. But again, I, you know, in terms of all of the just great weight of everything that was either inconsistent or brought out, I think counsel made that decision. And in any event, you know, and I think a lot of my argument is maybe going a little bit more toward prejudice. I think just looking at everything that was before the jury, whether or not they heard Kayla say that that didn't happen really wouldn't have made any difference. Ms. Burgundy, on the question of prejudice, this is, this is a very odd situation. It happens in ineffective assistance claims, of course. But I read your brief to be telling us there's no prejudice here because S.L. was so thoroughly impeached on the witness stand. And yet at the same time, the case is being described as compelling. And, you know, there was a guilty verdict, despite that really thorough impeachment. Right. So I guess I'm, I'm, I'm struggling here with the tension between those, those two views of the case, which both seem to be coming from the state. Well, I think a victim, I'm sorry, a witness can be very thoroughly impeached and still believable. You know, I think some of the post-conviction court's comments said, you know, described her as self-destructing, saying counsel really cut her apart. But he said, you know, I considered the motion to dismiss at the end of trial. She wasn't rendered incredible. So I think, you know, and I think this, we're coming just sort of the struggle that we have in these cases that turn on credibility. I think there's a temptation to say, because it's credibility, it's a close case. And I, I think that, I think that doesn't give a lot of credit to the jury because we asked the jury to determine credibility in all of these cases. So, you know, you can have a witness who's thoroughly impeached. The jury can still believe her for any number of reasons. And in this case, the case still went to the jury, you know, it still went to the jury. As I was, you know, answering Judge Roebner's question, I think a lot of the compelling nature, it wasn't just, you know, a lot of it just goes to, yes, SL was impeached thoroughly on a lot of inconsistencies. And in fact, she kind of recanted her own testimony about this therapist letter on the stand. But ultimately the jury had to ask itself, you know, look at her demeanor, look at her delivery. How is she, you know, how is she delivering this stuff? And is that, you know, do we believe her? And I think comparing her story with Gilbreth's, they ultimately believed her. I wanted to, you know, touch on, back to just the deficiency point. I think, you know, what gets lost in here a little bit is counsel did present, did offer strategic reasons for all of his decisions. I think the, you know, the main one is during trial after this very successful impeachment of SL, he made the both bogged down the rest of the presentation to kind of try to prove up these sort of lesser inconsistencies, which by the way, Gilbreth concedes, but the facts on most of these things were before the jury with these do not remember kind of questions. That doesn't make it in effect, like that doesn't make it ineffective. I think it is really effective to get the facts before the jury and, you know, to have to kind of come up and present these additional witnesses just to go to a that she maybe said something different in 2008 versus 2010, or she maybe told her sister something different, really bogs things down. But more to the point, counsel said, you know, presenting this stuff would have required him to put on hostile witnesses to the defense that he knew the state would be able to use to rehabilitate SL. And he didn't want to harm Gilbreth doing that. So just want to put that out there. I think on the prejudice prong, there's a lot of discussion about corroborative versus cumulative evidence. And I think we kind of all got a little off track on that. I think the easiest way to look at it is corroborative evidence is persuading that a witness is credible on a fact. And the opposite side of that is the opposite sort of purpose would be impeachment evidence to make to persuade that they're not credible. Both of those things can be cumulative, they, you know, it's, it's corroborative and cumulative aren't opposite. So I think in this, in this case, the district court kind of went astray and calling this evidence corroborative, because ultimately, it's impeachment evidence, it's going to make, it's going toward making the witness less credible. So and in any case, you're going to look at whether there's the evidence was cumulative. I'm sorry, cumulative. So I, you know, and again, that comes to the question of fact, and the both the Court of Appeals and the post conviction court noted that this really was all cumulative evidence like this. I think the post conviction court phrased it as old wine in new bottles, it really is just saying the same thing over and witness. So I want to make sure I'm touching on everything, which I probably won't, there's a lot of facts here. I just want to note, there's a lot of comment about, you know, this notion of the council needs to prove up these things that just putting things out there with these do not remember questions isn't effective. And I just want to underscore that the facts were before the jury, especially on the under and over clothing. And in fact, after counsel sort of brought that out, and maybe not in the best way, but, you know, following that the state emphasized that point, both in her questioning and in closing that SL said under the clothing in 2008. So I'd like to if I could reserve the rest of my time, appreciate it. Thank you, Mr. Rooney. Thank you, Ruby. May it please the courts. I'm attorney Cole Ruby representing the appellee Michael Gilbert. The decision of the Wisconsin Court of Appeals affirming the defendant's conviction against claims of ineffective assistance of counsel was both wrong and unreasonable. Under the standards established by Strickland. We're going to be asking this court to affirm the decision of which correctly identified for significant errors by the Court of Appeals that involved unreasonable applications of Strickland, specifically ignoring trial counsel's failure to investigate witnesses, or make them available for trial, which undermined any claim that he made an objectively reasonable mid trial decision not to call those witnesses when you would have no idea what they would say. Number two concluding that counsel strategically chose to stop impeachment after SL began selectively denying having written the false statements in the therapist letter, though the transcripts show clearly that counsel proceeded to question SL regarding what the defense characterizes her motive to lie, but simply failed to present any of her prior statements that contradicted her denials on those points. Number three mischaracterizing all of the defendant's unused evidence as cumulative based on an overly broad definition of that term which doesn't match anything from Wisconsin case law, Seventh Circuit case law, and even US Supreme Court case law on what constitutes cumulative evidence. Number four failing to make any assessment or acknowledgement of the extremely weak evidence that the state presented when the court evaluated prejudice. You know you argued that Wisconsin's definition of cumulative evidence is contrary to federal law. Can you tell us what Supreme Court case that definition is contrary to and what established law shows that Wisconsin got this wrong? Well your honor I don't necessarily know that that's I guess I would put it this way Arizona versus Fulminante from 1991 involved a question where the Arizona Supreme Court found that it was harmless error admitting a second confession of the defendant and the US Supreme Court said that although it's essentially the same evidence a second confession by the defendant it's not cumulative because it reinforces and corroborates the other one and I think Seventh Circuit case law is pretty consistent on this as well looking at Mosley versus Atchison from 2012 talking about evidence that provides corroborating support to one side's witness on a central and contested factual issue cannot be reasonably described as cumulative and that's what we have here these are central issues to the case these are not issues that were conceded by either side and one thing that I am struggling with in this case that I've never seen from the court of appeals or the circuit court or from the state is an actual analysis of these facts that are supposedly cumulative and how so most of these facts that we're talking about involve prior statements from SL that directly contradict her trial testimony on key points especially key points to defense like details of the alleged assaults or her motive to lie and the testimony simply wasn't challenged with these prior contradictory statements and one of my concerns about this case is that your position seems to require a defense attorney to use all available impeachment ammunition against a complaining witness that you can't leave anything in essence in your briefcase and that strikes me as and I probably strikes you as a trial lawyer as a bad rule to apply in a criminal defense now you've said that's not true in your brief but tell me why your logic doesn't point in that direction your honor that's a great question and I guess I would put it this way if there are areas where the attorney strategically decides not to go it's perfectly understandable not to use all impeachment areas but for example attorney van wagner testified that motive and bias of the witness are the most important area to him and yet when he ended his cross-examination of SL that's the area he talked about he talked about her you know constant arguments with the defendants she denied that there were those arguments she said that she didn't have behavioral problems there were no problems until she made these accusations and questions about whether he interfered with her dating and she said no I didn't get that impression at all there weren't those problems but he agreed with her he said everything was fine everything was good everything you know um you see I have the very same question has um I know that um I mean it it's like a scorched earth approach on her credibility um and that anything else uh would be ineffective you see most of what uh is argued here is the council it should should have gone on the attack against SL on every single front but when the member who was ultimately rejected by the family my god sent into foster care couldn't that strategy backfire terribly and create an awful lot of sympathy for SL your honor I understand that point I would say that she was over 20 at the time she was it does not make sense to ask the question have her deny it and then not use the very clear impeachment evidence that he has especially when he wouldn't even need to call other witnesses he's got video statements of her directly contradicting herself and that can be devastating evidence I understand that there's a tension for trial attorneys in these cases for not wanting to go too far not wanting to press too hard and to let that backfire on jury but at some point when you're testing credibility you have to do that if the goal is to convince the jury that there's not reasonable or there's not enough from her testimony that they can't find guilt beyond a reasonable doubt if you're asking these questions you can't let her answers that are directly contradicted by her prior statements go unchallenged because that goes as the truth to the jury so you are saying that you that he has to impeach every time he's got a contradictory state right I think on important matters matters that are central to his defense that's his defense theory if he's bringing up the issue and he's asking the question it's objectively unreasonable to ask the question if you're just going to let her answer go uncontradicted and it's why can't I if I've just finished the completion of her cross-examination on the letter to the counselor where she has just been blown out of the water in terms of impeachment she's she's you know she she she agreed she had written it it was true it was serious and then he confronts her with many contradictions and she's saying I didn't write that that's not true that didn't happen again and again and again why isn't he why can't a reasonable trial lawyer say I don't think the jury's going to believe anything she says I can plant some doubts with these questions and just make her deny these things and without going through every single impeachment and use it in closing argument I mean I guess my answer to that is that the common refrain from the state is always well if this is untrue why would they lie you know if why would they make this up and so that's why attorney Wagner himself insisted that motive and bias were the most important areas there and that's why he his cross on that point so I think in those areas when he's trying to demonstrate these specific points and he lets her statement go uncontroverted basically it sets up this kind of false dichotomy of the defendant getting up and saying that there were all these arguments and fighting and I was cutting her off from seeing this boyfriend and she says no there were no problems until I disclosed there were no problems with the boyfriend and that goes to the jury if the jury also has her own statement saying that there were all these problems that he was cutting her off that he grounded her for a month and a half that's a significant issue when it comes back to why would she lie because that's always where it comes back to in child sexual assault cases that's such a huge issue to the defense and to the state Gilbreth wanted to argue that she manufactured these charges because he didn't allow her to be with her boyfriend he was a strict disciplinarian and she didn't like the rules tell me is there a teenage girl in America who would not have that motive I mean how can anyone think that's a strong motive to fabricate sexual assault charges against a family member I'm trying to figure out why was it unreasonable to decline uh to highlight that motive your honor he didn't decline to highlight that motive that was the motive he was arguing he just failed to sufficiently implement it and I think that that's his strategy he's got the facts to support that it certainly is a situation where you know you're talking about any situation with teenagers having that as motive and here these allegations did come out and there were facts that would have supported the idea that this was to get away because she was being restricted so again if it's the theory of defense to present this claim this motive it's not reasonable to not challenge it when she flat out denies it and you could contradict her and I think that the court had asked um opposing counsel questions about Kayla that how is it reasonable strategy not to present her when SL basically says I disclosed her I told her about this as it was happening and it wasn't just saying the word molest it was also that she says that Kayla had this response of oh that's gross and never going to go by him again not calling Kayla you can't look at as a strategic decision because it's something attorney Van Wagner never even considered his testimony on that was he didn't consider asking her about it he never interviewed her he had no idea what she would say so it's absolutely not a reasonable strategic decision there was no strategy there even though these statements to both disclosing contemporaneously to Kayla and disclosing contemporaneously to Aaron they were both in the discovery attorney Van Wagner had that information he just didn't investigate it you know Aaron surely looks unavailable and um the lawyer said that uh Mr. Gilbert didn't even want him I don't see where Kayla would have been helpful nor Giovanni for that matter you know look the whole family cut their ties with her uh and I don't I mean wouldn't Kayla have given inadmissible extrinsic evidence your honor I don't think it's a collateral issue your honor my understanding of the law it's not extrinsic or collateral in this circumstance because again this is a delayed reporting case according to the state they've even got an expert to talk about delayed reporting um SL testifies on direct not cross-exam she testifies on direct I disclose this at the time it was happening to Kayla so for the defense to rebut that that's not collateral that's contradicting the state's evidence and to larger points with the family witnesses um Aaron so apparently being unavailable that again comes back to a lack of investigation by his attorney because that discussion about whether he could come to testify was never ever done in the context of attorney van Wagner saying we need you can you make it out here it was attorney van Wagner had not questioned him in depth about what he knew the question was well do you have to comply with a state subpoena so that discussion of availability omits the context that it was never you know strategic decision on what witnesses to call but he never interviewed Aaron didn't know what he would have to say so they only discussed whether he had to comply with a state subpoena Aaron testified at the Mockner hearing that if he would have been asked to come he would have come back which is exactly what he did at that hearing he flew in from Colorado and testified in person Thank you Mr. Ruby. Thank you. Ms. Burgundy. So on that last point I'm not sure which part of Aaron's testimony we're supposed to believe is if it's the part where he counsel did ask him about this disclosure did ask him about testifying and Aaron told him he didn't want it to basically they're trying to avoid well you know and then counsel said I did talk to Aaron and Aaron didn't want to come and Gilbreth didn't want him to come so I'm not sure really how we can find him to be an available witness and especially given that the post-conviction court made that finding and we defer to that even if Kayla had been available sitting ready to testify it doesn't render counsel's decision at the time based on how the cross-examination went to decide to not present additional witnesses so again I think that question you know even if that was a problem for not interviewing her beforehand it doesn't factor in. Judge Roebner you had asked about the issue of and Judge Hamilton about is this just holding that counsel has to if it's a credibility contest they just have to pile on every piece of impeachment evidence there is and I think that's the central problem with Mr. Gilbreth's argument here you know counsel did testify also at the Mockner hearing he was sensitive to the fact that there's a point where the jury could turn its sensibilities and turn its sympathies back to the victim he said and he noted there a few times she started crying you know there's a point really when if you're just battering her with these relatively small inconsistencies you know the jury's gonna really kind of turn their turn their allegiances so and counsel said he was sensitive to that and that went into his decision on the motive part I you know I think saying that the boys were the motive is really kind of I mean Robert was part of the motive but it really came down to the tearing up the license and the general just acrimony that everybody agreed and was there throughout the trial between S.L. and Gilbreth he was a strict disciplinarian she was a teenager who didn't like following his skipping school she was lying and rebelling I you know I everybody was saying that this was just you know she was a really well kind of a typical teenager so when it comes to the questions about motive in 2008 both Patty and Gilbreth were asked and had an opportunity to say why they thought she disclosed in 2008 and they didn't say it was Dustin I just he just wasn't a thing this just kind of came in at the end so I'm going to ask this court to reverse thank you thank you miss thanks to both counsel and the case is taken under advisement